IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Muhammad Nasir,                          :

                      Plaintiff        :        Civil Action 2:10-cv-01003

    v.                                   :

Asfa Ahad Shah, *et al.*,                 :        Magistrate Judge Abel

                Defendants       :

# Opinion and Order

This matter is before the Court on defendants Asfa Ahad Shah, Ahad Shah, and Ismat Arrus Shah's March 1, 2012 motion for summary judgment (doc. 40) and plaintiff Muhammad Nasir's March 1, 2912 motion for summary judgment (doc. 41).

I.        **Summary**

In 2009, plaintiff Muhammad Nasir, a physician, sought legal entry into the United States. For Nasir to obtain entry, his sponsors–his fiancé and her family–were required to execute I-864 Affidavits of Support, contractually agreeing to provide Nasir "any support necessary to maintain him . . . at an income that is at least 125 percent of the Federal Poverty Guidelines for his . . . household size . . . ." Doc. 1-1, PageID # 12. Nasir brings this lawsuit alleging that his now ex-wife Asfa Ahad Shah and her parents, Ahad Shah and Ismat Arrus Shah, breached that contract.

1

The affidavit of support is a requirement of 8 U.S.C. § 1183a. That statute provides that a sponsor must agree "to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line . . . ." The purpose of the statute is to insure that the legal residents do not have to depend on public benefits for their support. 8 C.F.R. § 213a.2(c)(2). To that end, the affidavit provides that the sponsor's "income and assets may be considered ('deemed') to be available [to the intending immigrant] in determining whether he . . . is eligible for certain Federal means-tested public benefits . . . ." Consequently, "household size includes the sponsor, the sponsor's spouse and all the sponsor's children," and "household income . . . includes the income of the sponsor, and of the sponsor's spouse . . . ." 8 C.F.R. § 213a.

For the reasons stated more fully below, Nasir's "household" for 2009 included Asfa Ahad Shah, Ahad Shaw and Ismat Arrus Shah because they lived together, and his household income for purposes of the statute and affidavit of support included his and their income. For the first three months of 2010, Nasir and Asfa Shah lived together in their own apartment. Since there is uncontroverted evidence that their 2009 income exceeded 125% of the poverty level for a household of four and for the first three months of 2010 that of a family of two, defendants did not breach their I-864 contract for that time frame. Similarly, Nasir was a family of one for the remainder of 2010 and all of 2011, and his income for that period exceeded 125% of the poverty level for a household

2

of one. There is insufficient evidence about his income for 2012 to determine whether there was a breach of contract.

For the first three months of 2010, Nasir and Asafa Ahad Shah lived together in their own apartment.

## II.    Arguments of the Parties

### A.    Defendants' Motion for Summary Judgment

Defendants argue that the doctrine of res judicata bars plaintiff's affidavit of support claim.  According to defendants, the Decree of Divorce is a final state court judgment between plaintiff and defendant Asfa Shah from which neither side appealed. This action involves the same parties as the divorce action. Although Ms. Shah's parents are defendants in this action, their obligations end when Ms. Shah's obligation ends. Defendants argue that plaintiff could have litigated his Affidavit of Support claim in the prior action because state courts have concurrent jurisdiction over I-864 affidavit of support claims.  Defendants further contend that the present action arises out of the same transaction or occurrence that was the subject matter of the state court divorce action. This action, like the divorce action, centers around plaintiff's marriage to Asfa Shah and their subsequent conflicts over economic and other matters.

Defendants also argue that they are not liable to plaintiff under the affidavit of support because he has been maintained at an income level of not less than 125% of the relevant federal poverty line.

3

### B.    Plaintiff's Response

Plaintiff argues that defendants are financially capable of providing plaintiff with support. He maintains that they hold well-paying jobs and own various properties. Defendants have previously sponsored three physician immigrants. Plaintiff maintains that defendants' lack of cooperation led to a difficult and protracted divorce intended to torture plaintiff. Plaintiff was forced to borrow funds from friends and has incurred severe debts. Plaintiff argues that the assets of his family are not relevant to this action. The contract is between defendants and the United States. No one from plaintiff's family has visited the United States. Plaintiff has never been involved in his family's business or financial matters. Plaintiff's family had no responsibility to pay his tuition.

Since his arrival in the United States, plaintiff contends that he has only held joint accounts with Asfa Shah. He has not received any money from his family. He argues that defendants have attempted to confuse the Court by only highlighting deposits to his account and not the withdrawals from one account to the other accounts of plaintiff. He maintains that he has maintained just one back account since December 2011.

Plaintiff further argues that money received from other sources cannot be used to mitigate defendants' responsibility. Plaintiff maintains that he has not received any other income other than his wages from his employment at the Ohio State University. His position at Ohio State University was eliminated.

Plaintiff maintain that the state domestic relations court told him to file a civil action to enforce the I-864. He maintains that there are no cases where I-864 obligations were dismissed on the basis of *res judicata*.

Plaintiff maintains that defendants acknowledge that the household size was four until April 2010. In 2009, plaintiff only earned $4,386.22, Plaintiff also has had loans to repay. Plaintiff argues that the household size can only be changed if there is a noted change in the situation, and defendants failed to file form I-865.

Plaintiff argues that even if the household size changed, plaintiff has the right to receive support at or above 125% of the poverty level. There is no maximum, and plaintiff's demand for $35,000.00 per year is reasonable.

### III.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## V.    Discussion

Under 8 U.S.C. § 1183a, immigrants who are likely to become a public charge are ineligible for admission into the United States unless their applications for admission are accompanied by an Affidavit of Support Form I-864. A person petitioning for the

6

admission of a family-sponsored immigrant must sign a Form I-864 affidavit, which is a legally enforceable contract between the sponsor and the sponsored immigrant. By signing the affidavit, the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable. 8 U.S.C. § 1183a(a)(1)(A).[1]

To determine whether damages are appropriate, courts compare the plaintiff's annual income for the particular years at issue against the 125% poverty threshold for each particular year rather than the aggregate income for the entire period. Any wages earned by the plaintiff during the years in question will mitigate the defendants'

---

[1] Section 1183a(a)(1) of title 8 of the United States Code states:
No affidavit of support may be accepted by the Attorney General or by any consular officer to establish that an alien is not excludable as a public charge under section 1182(a)(4) of this title unless such affidavit is executed by a sponsor of the alien as a contract--

(A) in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable;

(B) that is legally enforceable against the sponsor by the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit (as defined in subsection (e) of this section), consistent with the provisions of this section; and

(C) in which the sponsor agrees to submit to the jurisdiction of any Federal or State court for the purpose of actions brought under subsection (b)(2) of this section.

8 U.S.C. § 1183a

obligation under the affidavit. *See Younis v. Farooqi*, 597 F. Supp. 2d 552, 556 (D. Md. 2009).

Plaintiff argues that he is entitled to the 125% of the federal poverty line for a household of four. Although plaintiff was initially a member of a four person household, plaintiff is not entitled to 125% of the poverty level for the original household size:

> Not only would the Plaintiff be placed in a better position than had the breach not occurred, but such an interpretation would have a higher potential of depleting the sponsor's income through support obligations to the sponsored alien alone, leaving other family members living below the poverty level and likely to become public charges. This was surely not Congress's intent.

*Stump v. Stump*, No. 1:04-CV-253-TS, 2005 WL 2757329 at * 6 (N.D. Ind. Oct. 25, 2005).

Additionally, plaintiff appears to suggest that he is entitled to a net gain of 125% of the Federal poverty guideline. Because plaintiff has debts which he must pay, he believes that he is entitled to money to offset those debts in addition to an amount equaling 125% of the federal poverty guideline. This is a fundamental misunderstanding of the statute. Plaintiff is not entitled to a sum of money that equals 125% of the federal poverty level after taking into account his debts or loans. The purpose of the statute is not to provide for the sponsored alien's financial security or to enable him to incur debt and pay it back. The purpose of 8 U.S.C. § 1183a is to insure that the legal residents do not have to depend on public benefits for their support. 8 C.F.R. § 213a.2(c)(2). Plaintiff is entitled to be maintained at 125% of the federal poverty level, and no more.

Plaintiff further argues that he is entitled to support for his educational debt because the statute provides that he is entitled to "at least 125% " of the poverty level. There is no case law supporting that position. The literal language of the status binds the person petitioning the admission of a family-sponsored immigrant to provide support in the amount of 125% of the poverty level. The petitioner may provide more support than that, but in line with the statutory purpose to avoid the alien becoming a public charge the additional money does not reduce his support obligation for succeeding years.

From January through November 2009, plaintiff and Asah lived with her parents. In December 2009 to March 2010, plaintiff and Asah had an apartment together.  In March 2010, Asah moved out of the apartment she shared with plaintiff. After March 2010, plaintiff's household size was reduced to one.  In 2009, Ahad Shah earned $25,814. In 2009, Ismat Arrus Shah earned $23,562.85, and Asfa Sha earned $18, 193. 75. As a result, the household income for 2009 was well over $27,562.00. Plaintiff is not entitled to any compensation for 2009.

Plaintiff maintains that the Court is only supposed to take into account his earnings when considering whether he was maintained at 125% of the poverty level. Plaintiff argues that in 2009, he only earned $4,386.22 and 125% of poverty level for a family of four was $27,562. As a result, plaintiff maintains that he is entitled to the difference between what he personally earned ($4,386.22) and $27,562.00 in addition to $14,210.00 for loans that he paid. Household income means the income of all members of

the household.[2] Plaintiff's assertion that he personally is entitled to $27,562.00 is without

merit.

Plaintiff's assertion that he was "abused financially" is irrelevant. Plaintiff

complains that he was forced to pay rent when he and Asfa stayed with her parents in

2009. Plaintiff was also forced to make payments on Asfa's student loans and credit

cards with his money.  The fact remains that in 2009, the household was supported at

income far surpassing 125% of the federal poverty guideline. Disagreements as to how

the household income was allocated is beyond the scope of the I-864 contract and

irrelevant to plaintiff's claim.

---

[2]Section 213a.1 of title 8 of the Code of Federal Regulations defines household
income:

> Household income means the income used to determine whether
> the sponsor meets the minimum income requirements under
> sections 213A(f)(1)(E), 213A(f)(3), or 213A(f)(5) of the Act. *It includes
> the income of the sponsor, and of the sponsor's spouse and any other
> person included in determining the sponsor's household size, if the spouse
> or other person is at least 18 years old and has signed the form designated
> by USCIS for this purpose, on behalf of the sponsor and intending
> immigrants*. The "household income" may not, however, include the
> income of an intending immigrant, *unless the intending immigrant is
> either the sponsor's spouse or has the same principal residence as the
> sponsor and the preponderance of the evidence shows that the intending
> immigrant's income results from the intending immigrant's lawful
> employment in the United States* or from some other lawful source
> that will continue to be available to the intending immigrant after
> he or she acquires permanent resident status. The prospect of
> employment in the United States that has not yet actually begun
> will not be sufficient to meet this requirement.

8 CFR § 213a.1 (Emphasis added.)

Defendants have submitted evidence demonstrating that plaintiff was maintained at 125% of the Federal poverty guidelines for the years 2009 through 2011:

| Year | Household Size | Federal Poverty Guideline | 125% of Federal Poverty Guideline | Household income |
|------|----------------|---------------------------|-----------------------------------|------------------|
| 2009 | (Jan. - Nov.) 4<br><br>(Dec.) 2 | $22,050.00<br><br>$14,570.00 | $27,562.50<br>(11 months = $25,265.63)<br>$18,212.50<br>(1 month = $1,517.71) | $71,956.82 |
| 2010 | (Jan. - Mar.) 2<br><br>(Mar. - Dec.) 1 | $14,570<br><br>$10,830 | $18,212.50<br>(3 months = $4,553.13)<br>$13,537.50<br>(9 months = $$10,153.13) | $16,614.62 (Plaintiff's income. See doc. 39-2 at 25.)<br>$21,285.16 (Asah) |
| 2011 | 1 | $10,890 | $13,612.00 | $18,949.99 (See 36-1 at 1.) |

Defendant also submitted plaintiffs' bank statements as purported evidence of financial support from family and/or friends. The bank statements by themselves are not sufficient to demonstrate that Plaintiff received additional income. In his deposition, plaintiff testified that he received approximately $6,000 from a friend, but he maintained that he was loaned the money and was required to pay it back. Doc. 39-1 at p. 14, pl's dep. 50:2-53:18.  Defendants have not offered any evidence linking specific deposits or amounts reflected on the bank statements with specific sources from which plaintiff may have received income.

With respect to the year 2012, defendants maintain that plaintiff has already received $9,076.26. For 2012, 125% of Federal poverty guideline equals $13,962.50. Defendants, however, do not point to any evidence in the record to demonstrate that plaintiff has received $9,076.26 in income.

Defendants' argument that plaintiff's claim is barred on the basis of res judicata is without merit. Whether or not plaintiff sought or was entitled to spousal support is irrelevant to defendants' obligation to maintain plaintiff at 125% of the Federal poverty guideline. While it is true that spousal support would have offset any amount that was due to plaintiff under I-865, plaintiff is still entitled to attempt to enforce the I-864

Because plaintiff was maintained at an income above 125% for the years 2009 through 2011, defendants' motion for summary judgment is GRANTED in part. Plaintiff's claim for support based on 2012 remains pending. Plaintiff Muhammad Nasir's March 1, 2912 motion for summary judgment (doc. 41) is DENIED.


s/ Mark R. Abel_____
United States Magistrate Judge